UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JEAN R. GAIE )<br>*Plaintiff*, )<br>)<br>v. )<br>)<br>BRIDGEPORT POLICE DEPARTMENT )<br>*Defendant*. ) | CASE NO. 20-cv-01736 (KAD)<br><br><br><br><br>NOVEMBER 7, 2023 |

**MEMORANDUM OF DECISION**
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 38)**

Kari A. Dooley, United States District Judge:

Plaintiff Jean R. Gaie, a black man of Haitian descent, is an officer with the Bridgeport Police Department (the "BPD" or the "Department"). He brings this civil rights action alleging national origin and color discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e, *et seq*. His claims arise out of the Department's failure to promote him to Sergeant in 2019, failure to afford him a transfer to the Traffic Division in 2019, and failure to hire him to teach at the police academy. Pending before the Court is Defendant's motion for summary judgment as to all claims, which Plaintiff opposes. The Court has considered the parties' memoranda and accompanying exhibits. For the following reasons, the motion for summary judgment is GRANTED.

**Standard of Review**

A motion for summary judgment may be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 113–14 (2d Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248

(1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…" *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation," but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 44 (2d Cir. 2015) (quotation marks omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

Although the court is required to read a self-represented party's papers "liberally" and "interpret them to raise the strongest arguments that they suggest," *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (quotation marks omitted), "unsupported allegations do not create a material issue of fact" and do not overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

**Facts**

The following facts are taken from Defendant's Local Rule 56(a)(1) Statement of Material Facts ("Def. LRS," ECF No. 38-2) and exhibits attached thereto. *See Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995). As Plaintiff did not respond with his own Statement of Material facts pursuant to Local Rule 56(a)(2), all facts are deemed admitted to the extent that they are supported

by the record.[1] *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in said statement and supported by the evidence will be deemed admitted unless controverted by the statement required to be filed and served by the opposing party in accordance with Rule 56(a)2"); *Jackson v. Fed. Exp.*, 766 F.3d 189, 194 (2d Cir. 2014) (noting that well-supported factual allegations set forth in a defendant's Rule 56(a)1 statement will be deemed admitted where a plaintiff fails to respond).

Plaintiff has been a police officer with the BPD since his date of hire, June 29, 1998. *See* Def. LRS at ¶ 1. Bridgeport's Civil Service Commission hired Industrial/Organizational Solutions, Inc. ("IOS") to develop and administer the promotional examination for BPD's Police Sergeant position. *See id.* at ¶¶ 2–3. IOS retains industrial and organizational psychologists to work with public safety clients to develop, validate, and implement promotional selection processes. *See id.* at ¶ 5. Following its uniform guidelines, IOS conducted an analysis to target the essential skills, knowledge, and abilities required to perform the sergeant role. IOS and BPD structured an assessment that comprised of a written portion as well as multiple oral exercises, having selected the content and evaluation criteria from IOS' job analysis. *See id.* at ¶¶ 7–9. Candidates for the position received a standard list of source materials from which the written and oral examinations were developed. *See id.* at ¶ 10.

---

[1] Local Rule 56(a)2 requires the party opposing summary judgment to submit a statement containing separately numbered paragraphs corresponding to the Local Rule 56(a)1 Statement and indicating whether the opposing party admits or denies the facts set forth by the moving party. Each denial must include a specific citation to an affidavit or other admissible evidence. D. Conn. L. Civ. R. 56(a)3. On February 21, 2023, Plaintiff filed a *pro se* response to Defendant's motion for summary judgment, which took the form of a two-page letter asserting that he "denied" Defendant's memorandum and that his discrimination claims "did not fail as a matter of law." *See* Pl. Res., ECF No. 41. At that time, Plaintiff was represented by counsel, Attorney John R. Williams. The Court entered an order explaining that the Court does not allow hybrid representation and advised Plaintiff that if he wished to proceed pro se, he must file an appearance and counsel of record must move to withdraw as counsel. *See* ECF No. 42. Subsequently, Plaintiff filed a *pro se* appearance and Attorney Williams filed a motion to withdraw, which the Court granted. *See* ECF Nos. 43-45. The Court therefore accepted Plaintiff's submission as his opposition to the motion for summary judgment. Thereafter, Plaintiff filed additional exhibits as well as a Sur-Reply to the Defendant's Reply. The Court has reviewed all of these submissions.

Seventy candidates, including Plaintiff, completed the written assessment portion of the examination on October 12, 2018, which comprised 100 questions. *See id.* at ¶¶ 11–12. Plaintiff and one other officer scored lowest on the written examination, with a score of 45. *See id.* at ¶ 13. Sixty-seven candidates, including Plaintiff, completed the oral assessment portion of the examination on November 17, 2018, which comprised candidates presenting to a video camera an oral response to four different scenarios. *See id.* at ¶¶ 14, 17. To assess the candidates' oral responses, IOS recruited and trained sergeants (or other personnel of higher rank) from other police departments near Bridgeport, considering diversity of tenure, rank, experience, and knowledge/skill. *See id.* at ¶¶ 18–20. The assessors attended a mandatory one-day training seminar conducted by IOS in November of 2018. *See id.* at ¶ 22. At the training, assessors received detailed descriptions and guides for evaluating the various components of the oral examination, as well as materials on the rating scales and forms. *See id.* at ¶ 23. Assessors underwent practice ratings and exercises, and panels of assessors were assigned with racial and gender diversity in mind. *See id.* at ¶¶ 25-26.

The rating system used by assessors for each performance dimension was a 5-point scale ranging from six to ten, where six was "unacceptable" and ten was "superior." *See id.* at ¶¶ 28-29. Each individual assessor made a preliminary rating for each dimension for a given candidate, at which point the panel of assessors discussed those ratings with each other. *See id.* at ¶ 31. IOS required the panel to land on final ratings that were no greater than one point apart on the 5-point scale. *See id.* at ¶ 32. Assessors viewed and evaluated the sergeant candidates' video-recorded responses from November 27 to November 30, 2018. *See id.* at ¶ 33. The panel that assessed Plaintiff's oral responses comprised two African Americans, two Hispanics, and three Caucasians. *See id.* at ¶ 35. Plaintiff received a total of twenty rating scores: sixteen sixes ("unacceptable") and

4

four sevens ("minimally acceptable"). Plaintiff did not receive a rating from any assessor higher than seven on any dimension of the oral assessment. *See id.* at ¶¶ 37-38. Among others, the assessors' critiques of Plaintiff's responses included the following observations: "never addressed the crowd"; "did not conduct a complete investigation"; "missed many key points"; "no/very little eye contact"; "poor time management"; "non-assertive"; and "poor performance." *See id.* at ¶ 40. Nowhere in their comments did the assessors mention Plaintiff's accent or any difficulty in understanding his responses. *See id.* at ¶ 41. The assessors aver that the ratings they gave to Plaintiff were based on the substance of his responses rather than any consideration of his national origin or accent. *See id.* at ¶ 42. Of the sixty-seven officers who completed both the written and oral portions of the sergeant examination, Plaintiff placed sixty-second, with a total score of 54.60.[2] *See id.* at ¶ 44. Plaintiff alleges that four other candidates with identical experience and training and with the same or lesser qualifications ranked between two and fourteen on the examination. *See* Am. Compl., ECF No. 19, at ¶ 7.

Plaintiff appealed his scoring process, stating that "I truly believe my answers were not fully understood by the reviewers because of my accent." *See id.* at ¶ 48. He alleges that the evidence "clearly demonstrated that his Haitian accent was the only factor differentiating him from the four candidates who ranked higher than he on the examination." *See* Am. Compl. at ¶ 8. IOS reviewed Plaintiff's appeal and recommended the appeal be denied. *See* Def. LRS at ¶ 48. Subsequently, the city of Bridgeport's Personnel Examiner, Lisa Mastronunzio, listened to Plaintiff's recorded responses and while she noted that Plaintiff spoke with an accent, she also deemed his responses intelligible. Ms. Mastronunzio informed Plaintiff that his appeal was denied, and provided an Examiner's Report, dated January 29, 2019, to the Civil Service Commission. *See*

---

[2] This score included credit awarded by BPD for seniority points. *See id.* at ¶ 46.

*id.* at ¶¶ 49-52. On March 12, 2019, the Commission unanimously accepted the Examiner's Report, certifying the results of the 2018 Sergeant Promotion Examination. *See id.* at ¶ 53.

On January 16, 2019, BPD's Chief of Police sought letters of interest from officers to fill one of four positions having been recently added to BPD's Traffic Division. *See id.* at ¶ 54. Nineteen officers, including Plaintiff, submitted letters of interest for assignment to the Traffic Division. *See id.* at ¶ 55. Twelve of those nineteen, including Plaintiff, interviewed for the assignment. *See id.* at ¶ 57. A panel interviewed the twelve officers and on February 1, 2019, forwarded six of those applicants for consideration by the Chief of Police. Those candidates were a Hispanic male; two Caucasian females; a Black female; a Black male; and a Caucasian male. *See id.* at ¶ 61. The interview panel considered each of those six candidates better qualified and more deserving than Plaintiff for assignment to the Traffic Division. *See id.* at ¶ 62. Plaintiff alleges, however, that three candidates with lesser qualifications were selected. *See* Am. Compl. at ¶ 10. Defendant notes that no applicant, including Plaintiff, who had been disciplined in the past five years was selected as a finalist for the Chief's consideration.[3] *See* Def. LRS at ¶¶ 63-64.

On March 29, 2019, Plaintiff filed a complaint with the Commission on Human Rights and Opportunities ("CHRO"), *see id.* at ¶ 67, which was deemed cross-filed with the Equal Employment Opportunity Commission (EEOC) through the work-sharing relationship between the two agencies. *See Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 231 (D. Conn. 2000). Therein, he alleged he was "discriminated against in terms and conditions" of his employment, that he was given a "poor evaluation," and that he was "denied equals service" and "retaliated against" on March 26, 2019, because of his color and Haitian ancestry. *See id.* at ¶ 68. Nowhere in his CHRO/EEOC affidavit did Plaintiff assert that he was subject to harassment or that he

---

[3] Plaintiff had been arrested following an incident of domestic violence in 2016 and had been twice reprimanded for motor vehicle accidents while on duty. *See* Def. LRS at ¶¶ 63-65.

6

experienced a hostile work environment. *See id.* at ¶ 69. Rather, Plaintiff posited that his accent resulted in his poor grade on the Sergeant Promotional Examination; that he was not selected for the BPD Traffic Division assignment even though he was more qualified than those who did receive the assignment; and that Sergeant (now-Lieutenant) Charles Johnson gave him a poor performance evaluation on March 26, 2019, in retaliation for an alleged incident from 2005. *See id.* at ¶ 70. The CHRO dismissed Plaintiff's complaint on April 19, 2020 upon a finding of no reasonable cause. *See id.* at ¶ 71.

Plaintiff filed a *pro se* complaint in this Court on November 19, 2020, alleging for the first time a hostile work environment on account of his color and ethnicity. *See id.* at ¶ 73. He also alleged that Lieutenant Johnson had given him a poor performance evaluation in March of 2019 in retaliation for Plaintiff's confrontation with him from 2005 regarding Johnson's alleged operation of an uninsured and unregistered vehicle. *See id.* at ¶ 74. Subsequently, on April 16, 2021, Plaintiff, then represented by counsel, filed an Amended Complaint, which is the operative Complaint in this case.[4] Plaintiff alleges he has been subjected to a hostile working environment because of his Haitian nationality, including in-person and anonymous police-radio mockery, as well as supervisors who point out that they cannot understand him when he speaks. *See* Am. Compl. at ¶ 9. Other than a receipt of Plaintiff's EEOC/CHRO complaint from April of 2019, BPD has no record of other complaints filed by Plaintiff. *See* Def. LRS at ¶ 76. Plaintiff further alleges, however, that his repeated applications to become an instructor at the Bridgeport Police Academy have been rejected due to his Haitian accent. *See* Am. Compl. at ¶ 11.

**Discussion**

---

[4] The Amended Complaint omitted any reference to a performance evaluation from Lieutenant Johnson or any unlawful retaliation. *See id.* at ¶ 75.

Defendant argues that Plaintiff's discrimination claims fail as a matter of law, as it has proved a legitimate, non-discriminatory reason—that Plaintiff cannot demonstrate is both false and discriminatory—for the promotion decisions he challenges. Defendant avers that the challenged hiring decisions were made because other candidates were better qualified, and that there is no evidence that the specified reason is pretextual. Further, Defendant argues that because Plaintiff's CHRO filing did not assert a hostile work environment claim, he failed to exhaust his administrative remedies, and that claim in this Court fails as a matter of law.[5] In response, Plaintiff argues that his claims do not fail as a matter of law because "we all know that the City of Bridgeport has a common practice of manipulating the Examination process." Pl. Res., ECF No. 41. Additionally, he claims that any disciplinary action against him was "fabricated" and was a "result of retaliation," and that he has been subjected to a hostile environment in which he was ridiculed for his accent.[6] *See id.* The Court agrees with Defendant that Plaintiff's claims fail as a matter of law.

*Failure to Promote Claims*

"Title VII makes it 'an unlawful employment practice for an employer…to fail or refuse to hire or to discharge…or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's…

---

[5] Because the Court agrees with Defendant that Plaintiff failed to exhaust administrative remedies, it does not reach the subsequent argument that even if he had not failed to exhaust, his claim fails to allege severe or pervasive conduct or how that conduct could be imputed to BPD as the employer. The Court notes, however, that argument's apparent merits. *See Harris v. Forklift Sys. Inc.*, 510 U.S. 17, 21 (1993) (holding that an employer is liable under Title VII for hostile work environment when the environment is "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.").

[6] Plaintiff references an "unreasonable monetary offer" made by Defendant "through a video settlement conference," to challenge the notion that his case has no merit. However, any evidence of settlement negotiations is inadmissible pursuant to Federal Rule of Evidence 408. *See Rein v. Socialist People's Libyan Arab Jamahiriya*, 568 F.3d 345, 351 (2d Cir. 2009) (finding that Rule 408 "essentially forbids a court from basing adverse findings on a party's concessions in settlement negotiations.").

[race].'" *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 199 (2d Cir. 2017) (quoting 42 U.S.C. § 2000e-2(a)(1)). Discrimination claims under Title VII are analyzed using the *McDonnell Douglas* burden-shifting framework. *See McPherson v. New York City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006). The *McDonnell Douglas* test proceeds as follows: (1) plaintiff "bears the minimal burden of setting out a prima facie discrimination case," (2) if plaintiff satisfies its burden, plaintiff "is then aided by a presumption of discrimination unless the defendant proffers a legitimate, nondiscriminatory reason for the adverse employment action," and (3) if the defendant proffers a legitimate, nondiscriminatory reason, "the presumption evaporates and the plaintiff must prove that the employer's proffered reason was a pretext for discrimination." *Id.* (internal quotation marks and citations omitted).

To establish a prima facie case based on an alleged discriminatory failure to promote, a plaintiff must allege that (1) he is a member of a protected class; (2) he applied and was qualified for the position; (3) he was rejected for the position; and (4) the rejection of the plaintiff's application occurred under circumstances giving rise to an inference of discrimination. *Lomotey v. Conn. Dept. of Transp.*, 355 F. Appx. 478, 480 (2d Cir. 2009). If a plaintiff does not have direct evidence of discriminatory intent, plaintiff may present evidence of disparate treatment, such as evidence that his employer treated him less favorably than similarly situated employees outside of his protected class, to support an inference of discriminatory intent. *See Bentley v. AutoZoners, LLC,* 935 F.3d 76, 89–90 (2d Cir. 2019) (citing *Mandell v. County of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003)); *Yu v. New York City Hous. Dev. Corp.*, 494 F. Appx. 122, 125 n.4 (2d Cir. 2012) ("[T]he fourth element is also established if the employer fills the position with a person outside the protected class who was similarly or less qualified than the plaintiff.").

Even if Plaintiff had established a prima facie case of discrimination, which the court does not decide, the BPD offered a legitimate, nondiscriminatory reason for failing to promote him or afford him the positions he sought within the Department.[7] First, it is undisputed that an employer who establishes that another candidate was better qualified for a promotion satisfies its burden under *McDonnell Douglas. See Lomotey v. Connecticut-Dept. of Transp.*, 355 Fed. App'x 478, 482 (2d Cir. 2009) (where legitimate, non-discriminatory reasons for failure to promote included another candidate who was better qualified and plaintiff not performing as well in an interview); *see also Porter v. City of Bridgeport*, No. 3:19-cv-01080-JAM), 2022 WL 2981600, at *4 (D. Conn. July 28, 2022) (same). Further, "[e]mployers may use interview performance as a deciding factor in an employment decision." *Haughton*, 2021 WL 4248858, at *6; *see also Byrnie v. Cromwell Bd. of Educ.*, 243 F.3d 93, 104 (2d Cir. 2001) ("[T]here is nothing unlawful about an employer's basing its hiring decision on subjective criteria, such as the impression an individual makes during an interview."). When the explanation, "offered in clear and specific terms, is reasonably attributable to an honest even though partially subjective evaluation of qualifications, no inference of discrimination can be drawn." *Byrnie*, 243 F.3d at 104. Relying on subjective criteria is especially permissible where an employee is being considered for a supervisory position. *Vidal v. Metro-North Commuter R. Co.*, No. 3:12-cv-248 (MPS), 2014 WL 3868027, at *7 (D. Conn. Aug. 6, 2014) (citing *Robertson v. Sikorsky Aircraft Corp.*, No. 3:97-cv-1216, 2000 WL 33381019, at *3 (D. Conn. July 5, 2001)).

Here, Defendant has put forth undisputed evidence that Plaintiff was less qualified than other applicants for the Sergeant position he sought. Nearly 93% of applicants scored better than

---

[7] In his Amended Complaint, Plaintiff alleges three instances of discriminatory failure to promote: (1) position of Sergeant in 2018; (2) assignment to the traffic division in 2019; (3) and multiple applications to become an instructor at the Bridgeport Police Academy.

Plaintiff on the oral portion of the Sergeant Examination. In addition, the Examination process contained a written portion, which could not have been influenced by Plaintiff's accent. On the written examination, Plaintiff tied for the lowest score. Second, as to Plaintiff's effort to be transferred to the Traffic Division, of nineteen candidates who submitted letters of interest for the assignment, only twelve received interviews (including Plaintiff). Of those, only six were recommended to the Chief, and of those only four were selected for the assignment. Two of the six officers forwarded for consideration were black, which further undermines any purported inference of discriminatory animus in the decision making with respect to Plaintiff's color. *See McCulley v. S. Connecticut Newspapers, Inc.*, 98 F. Supp. 2d 216, 223 n.4 (D. Conn. 2000) ("The fact that the position which the plaintiff sought was filled by a member of her same protected class undercuts her claim of racial discrimination."). And Defendant offers that the four individuals selected were better qualified than Plaintiff. Finally, as to the teaching assignment at the Police Academy, Defendant argues that the same considerations apply—Plaintiff's poor examination scores on the Sergeant Examination demonstrate that his knowledge and skills do not stand up to the qualifications of the other candidates.

In response, Plaintiff provides no evidence that Defendant's reason for not promoting him or affording him these other assignments was pretext for discrimination. Instead, he offers wholly conclusory statements that "Bridgeport has a common practice of manipulating the Examination process" and that there was a federal investigation into a conspiracy to "rig the 2018 Examination process," which had "proven the municipality's corruption beyond a reasonable doubt." *See* Pl. Res. at 1. He further implies that seniority is a hiring factor within BPD, and that "he had been waiting so long for this opportunity." As noted above, Plaintiff's seniority was factored into his final score on the Sergeant Examination. More to the point, none of these assertions touch upon

11

Defendant's proffered reason for its hiring decisions. Indeed, Plaintiff does not present evidence of his own superior qualifications to those candidates selected for the roles to which he applied. And given his poor performance on the Sergeant Examination, it is unclear what such evidence might look like, given that the decisions at issue were based largely on the results of that examination. Nor do Plaintiff's assertions suggest that the process, corrupt or otherwise, derives from an intent to discriminate on the basis of classifications protected by Title VII. The Court accepts that the Plaintiff disagrees with the decisions made and may believe that they were born of racial or ethnic animus. However, the record before the Court simply does not allow such an inference in the face of the legitimate reasons offered for those decisions. The Court "must respect an employer's unfettered discretion to choose among qualified candidates." *Peddy v. L'Oreal USA, Inc.*, 848 Fed. App'x 35, 37 (2d Cir. 2021). Plaintiff's Title VII claims fail as a matter of law.

*Hostile Work Environment Claim*

"[T]he failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court[.]" *Hardaway v. Hartford Public Works Dep't,* 879 F.3d 486, 489 (2d Cir. 2018) (quotations and citation omitted). Here, there is no dispute that Plaintiff filed a claim with the EEOC/CHRO and therein did not assert a hostile work environment claim. Defendant argues that Plaintiff failed to exhaust his administrative remedies as to this claim and that it must therefore fail as a matter of law.[8]

If a plaintiff failed to pursue a given claim in administrative proceedings, the federal court generally lacks jurisdiction to adjudicate that claim. *See DeBerry v. Brookdale Univ. Hosp. & Med. Ctr.*, 11 F. Supp. 3d 387, 393 (E.D.N.Y. 2014) (citing *Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001); *Butts v. City of New York Department of Housing*

---

[8] Plaintiff did not respond to this argument.

*Preservation & Development,* 990 F.2d 1397, 1401–02 (2d Cir. 1993)).[9] However, the court may exercise jurisdiction if a claim not raised before the administrative agency is "reasonably related" to those that the plaintiff did assert before the agency. *Butts,* 990 F.2d at 1401. A claim is considered "reasonably related" if the conduct complained of would have fallen within the "scope of the EEOC investigation" and is conduct "which can reasonably be expected to grow out of the charge" that was made to the agency. *Id.* at 1402.

Plaintiff's EEOC/CHRO complaint alleged that he scored poorly on the Sergeant Examination and was not promoted to Sergeant due to his accent. He alleged discrimination insofar as those selected to the Traffic Division were less qualified than himself and finally, that there was a retaliatory performance evaluation in March 2019 arising out of an incident between Plaintiff and Sergeant (now-Lieutenant) Johnson in 2005. As noted, this latter claim is not pursued in this action. Plaintiff's proffer of a hostile work environment includes allegations that he was subject to anonymous mocking of his accent over the police radio and that his supervisors told him they could not understand him.[10] Having no information as to Plaintiff's work environment separate and distinct from the charged discrimination in the promoting and assigning of Plaintiff, the EEOC would have no reason to include such an inquiry within its review of the Plaintiff's claim. Accordingly, Plaintiff cannot assert a hostile work environment claim for the first time in this Court. *See Belgrave v. Pena*, 254 F.3d 384, 386 (2d Cir. 2001) (*per curiam*) (affirming dismissal of Title VII claims where plaintiff failed to present the district court with a material question as to whether he had timely filed a formal [administrative] complaint); *see also Khaleel v. Potter*, 307 Fed. App'x 527, 529 (2d Cir. 2009) (affirming district court granting of summary judgment on the

---

[9] *Butts* was superseded by statute on other grounds. *Duplan v. City of New York*, 888 F.3d 612, 622 (2d Cir. 2018).

[10] Other than the EEOC/CHRO complaint, the Defendant has no record of any complaints being made by Plaintiff.

sole ground that plaintiff had not exhausted his administrative remedies prior to filing Title VII lawsuit in federal court); *Geneste v. AGMA, Inc.,* No. 12-CV-5801 WFK, 2014 WL 5475392, at *6 (E.D.N.Y. Oct. 29, 2014) (in which the district court granted defendant's motion for summary judgment after determining that plaintiff's retaliation claim was not sufficiently related to claims raised in her initial administrative complaint, while granting summary judgment as to her other claims on separate grounds).

**Conclusion**

For the foregoing reasons, the Defendant's motion for summary judgment is GRANTED. The Clerk of Court is directed to enter judgment for Defendant and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 7th day of November 2023.

       */s/ Kari A. Dooley*
       KARI A. DOOLEY
       UNITED STATES DISTRICT JUDGE